# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| NIKKI BELL, individually and on behalf of all others similarly situated, | ) ) ) | No. |
| *Plaintiff,* | ) ) ) | **Jury Trial Demanded** |
| vs. | ) ) | |
| FCA US LLC, a Delaware limited liability company, | ) ) ) | |
| *Defendant.* | ) ) | |

## CLASS ACTION COMPLAINT

## Table of Contents

I.      INTRODUCTION ........................................................................2

II.     JURISDICTION AND VENUE..................................................5

III.    PARTIES ...................................................................................5

IV.     FACTUAL ALLEGATIONS .......................................................6

V.      CLASS ALLEGATIONS ...........................................................20

COUNT I  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(ON BEHALF OF PLAINTIFF AND THE CLASS AND SUBCLASS) ..............23

COUNT II VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT, 815
ILCS 505, *ET SEQ.*
(ON BEHALF OF PLAINTIFF AND THE SUBCLASS) ....................................26

COUNT III UNJUST ENRICHMENT
(ON BEHALF OF PLAINTIFF AND THE CLASS AND SUBCLASS)..............29

COUNT IV VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15
U.S.C. § 2301 *ET SEQ.*
(ON BEHALF OF PLAINTIFF, THE CLASS AND SUBCLASS).......................30

REQUEST FOR RELIEF .......................................................................34

DEMAND FOR JURY TRIAL ...............................................................35

Plaintiff, Nikki Bell ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action for herself and on behalf of all persons in the United States who purchased or leased any Jeep Wrangler JL and Gladiator JT vehicles from the 2021 through 2023 model years ("Class Vehicles") designed, manufactured, marketed, distributed, sold and warranted by FCA US LLC, a Delaware limited liability company ("FCA" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of publicly available information.

## I.   INTRODUCTION

1.     Car makers must design and manufacture safe cars. Properly designed and manufactured cars do not spontaneously catch fire or pose a risk that they will spontaneously catch fire. Cars that spontaneously catch fire or that pose a risk that they will spontaneously catch fire are inherently dangerous.

2.     Plaintiff brings this action on the basis that the Class Vehicles had defective part(s) that increase the risk of a fire spontaneously starting, including when the vehicle is parked and not in use. Currently, it is believed that the defective component in the Class Vehicles is the power steering pump electrical connector ("Pump Electrical Connector") ("the Fire Defect").

3.     The safety issue is real. The National Highway Traffic Safety Administration opened an investigation of underhood fires on or about September 6, 2024. The investigation is identified as PE24024 and was prompted by a "VOQ and Early Warning Report" review.

4.     According to the Office of Defects Investigation ("ODI"), 9 Vehicle Owner Questionnaire reports, including 1 Death and Injury Report, and multiple field reports alleging incidents of engine compartment fires in model year 2021-2023 Jeep Wrangler and Gladiator vehicles were made, dating back to as early as March 2021.[1] The majority of reports describe a fire occurring while the ignition in the vehicle was in an 'OFF' state with a suspected origin at the passenger front side of the engine compartment. It has been reported that at least one fatal accident was caused by a vehicle fire due to the Fire Defect. It is also reported that the fires have caused total vehicle loss and occur without warning.

5.     Further, according to MotorSafety.org, "Many complaints mentioned the vehicle catching on fire out of the blue while driving or parked. In one case, the fire occurred six hours after the car was parked and turned off. In another case, the car spontaneously burned to the ground while parked next to [the] house."[2]

---

[1] Ex. 1, https://static.nhtsa.gov/odi/inv/2024/INOA-PE24024-19581.pdf.
[2] Ex. 2, www.motorsafety.org/us-government-investigates-stellantis-on-back-of-fire-related-fatality/.

6.      According to the ODI, the estimated population of affected vehicles is 781,459.

7.      FCA is aware of the Fire Defect in Class Vehicles based on consumer complaints and communications with NHTSA.

8.      Additionally, FCA knew or reasonably should have known about the Fire Defect through sources unavailable to consumers, including pre-market testing (including thermal stress tests and component durability assessments), reports from FCA service centers, and other, aggregate post market data from FCA dealers about the Fire Defect in the Class Vehicles.

9.      On information and belief, the Fire Defect is a latent defect in each Class Vehicle and was present in each Class Vehicle at the time of sale or lease.

10.     Nonetheless, FCA concealed the existence of the Fire Defect and its attendant hazards from the Plaintiff and Class Members at the time of sale or lease. The Defendant has not issued a recall to remedy the Fire Defect.

11.     If they had known about the Fire Defect at the time of sale or lease, Plaintiff and the other Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

12.     As a result of their reliance on FCA's omissions, owners and lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money, property and/or value of their Class Vehicles.

## II.    JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action, which is brought as a nationwide class action, under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. § 1332 (d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the putative class, on the one hand, and Defendant, on the other, are citizens of different states. Accordingly, Plaintiff's assertion of a nationwide class action in this District is proper under the Class Action Fairness Act.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendant is headquartered in this District, Defendant has marketed, advertised, sold and leased the Class Vehicles within this District, and many of the acts and transactions giving rise to this action occurred in this District, including FCA's design, manufacturing, promotion, marketing, distribution, and sale of the Class Vehicles. Further, a significant number of the Class Vehicles are registered in this District and thousands of Class Vehicles are in operation in this District.

## III.    PARTIES

16.    Plaintiff is a citizen of the State of Illinois and is domiciled in Cook County, Illinois.

17.     Defendant is a limited liability company organized existing under the laws of the State of Delaware. Defendant's corporate headquarters are located at 1000 Chrysler Drive, Auburn Hills, Michigan. Defendant is—through its corporate holding company structure—wholly owned by Stellantis N.V. a publicly traded company organized and existing under the laws of The Netherlands, with its principal place of business in Amsterdam, The Netherlands.

18.     Defendant designs, manufactures, markets, warrants, distributes, services, repairs, sells and leases passenger vehicles, including the Class Vehicles, in Michigan and throughout the United States. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

19.     Defendant, through various entities, markets, distributes, warrants and sells Jeep vehicles and parts for those vehicles, including the Class Vehicles, in multiple locations throughout the United States, including Michigan.

### IV.     FACTUAL ALLEGATIONS

20.     Throughout its marketing brochures for the Class Vehicles, FCA emphasizes their safety, durability and reliability, evidencing the materiality of those features to buyers.

21.     FCA developed and disseminated the owner's manuals and warranty booklets, advertisements, brochures and other promotional materials relating to the Class Vehicles, with the intent that such documents be purposely distributed

- 6 -

throughout all fifty states. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

22.    The brochures for the Class Vehicles prominently advertise their advanced safety features, including:

> When it comes to your well-being on the road, Jeep Gladiator is ready and willing to stand as a constant Guardian. Gladiator envelopes you with more than 80 standard and available safety & security features, sensors and cameras keep watch around your perimeter to help provide peace of mind.[3];

> When it comes to your well-being on the road, Jeep, Wrangler is ready and willing to stand as a constant guardian. Wrangler envelopes you with more than 75 standard and available safety & security features. Sensors and cameras keep watch around your perimeter for complete peace of mind.[4];

> This high-strength body structure helps protect occupants and offers features that add peace of mind.[5]

---

[3] Ex. 3, *2021 Gladiator,* Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Gladiator/-Jeep_US%20Gladiator_2021.pdf (last visited on January 10, 2025); Ex. 4, *2022 Gladiator*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf (last visited on January 10, 2025). Ex. 5, *2023 Gladiator*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20-Gladiator_2023.pdf (last visited January 10, 2025).
[4] Ex. 6, *2021 Wrangler*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Wrangler/-Jeep_US%20Wrangler_2021.pdf (last visited on January 10, 2025); Ex. 7, *2022 Wrangler*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Wrangler/-Jeep_US%20Wrangler_2022.pdf (last visited on January 10, 2025).
[5] Ex. 3; Ex. 4; Ex. 5.

This high-strength super structure helps protect every occupant and is filled with features that add peace of mind.[6]

23.     The brochures also advertise the vehicles' superior quality and

workmanship:

> Born as a purpose-built 4x4 for the front lines of WWII in 1941, Jeep 4x4s soon transitioned from the battlefields to the farm fields and backroads of America, where they diligently kept up with hard daily use in industry and recreation alike. Through 80 years and all manner of terrain and weather, a growing lineup of Jeep 4x4s has consistently moved the bar with strong drivetrains, innovative designs and quality components that stand out from all other 4x4s SUVs and Trucks.[7]

> The truck that does it all: Hauls, tows, and delivers you to the great wide open with legendary capability, outstanding utility, intuitive technology and trademark open-air freedom that the Jeep Brand is known for.[8]

> This truck does it all. Hauls, tows and delivers you to the great wide open with legendary capability outstanding utility intuitive technology and open-air freedom;[9]

> Born as a purpose-built 4x4 for the front lines of WWII in 1941, Jeep 4x4s soon transitioned from the battlefields to the farm fields and backroads of America, where they kept up with hard daily use in industry and recreation alike. Through 80 years and all manner of terrain and weather. A growing lineup of Jeep 4x4s has consistently moved the bar with strong drivetrains, innovative engineering and quality components that stand out from all other SUVs.[10]

---

[6] Ex. 6; Ex. 7.
[7] Ex. 3.
[8] Ex. 4.
[9] Ex. 5.
[10] Ex. 6.

24.     The Class Vehicles have a latent defect that causes a serious safety concern.

25.     Specifically, the Fire Defect in the Class Vehicles stems from a defective Pump Electrical Connector and/or its component parts that results in a runaway thermal event and causes a fire, including even when the vehicle is not in use and is turned off.

26.     In March 2023, Plaintiff, like the other class members, purchased a used 2023 Jeep Wrangler ("Jeep Wrangler") from Bettenhausen Motor Sales, Inc. ("Bettenhausen"), in Tinley Park, Illinois.

27.     Bettenhausen is an authorized Jeep dealer.

28.     Based on the Defendant's active and persistent promotions touting the quality of its vehicles, some of which are set forth herein, and her admiration of Jeep vehicles, Plaintiff considered the Defendant to be a quality company with a reputation for producing reliable and safe vehicles.

29.     In addition to Defendant's marketing and promotion of its reputation, Plaintiff decided to purchase a 2023 Jeep Wrangler because she believed it was a safe, highly reliable vehicle.

30.     Since purchasing the Jeep Wrangler, Plaintiff has taken it to Bettenhausen for service and maintenance.

31.     Since purchasing the Jeep Wrangler, Plaintiff contacted Bettenhausen, relayed her concern about the Fire Defect and risk of fire and inquired about whether she should take the Jeep Wrangler to Bettenhausen for inspection relating to the Fire Defect.

32.     Bettenhausen asked the Plaintiff to provide the VIN # for the Jeep Wrangler which Plaintiff provided. Bettenhausen advised Plaintiff that it would check the VIN # to determine whether she said bring the vehicle in and call her back.

33.     Bettenhausen called the Plaintiff back and informed her that there was no reason to bring the Jeep Wrangler in for inspection or repairs relating to the Fire Defect because "it was not part of the recall".

34.     Defendant has not instituted a recall to remedy the Fire Defect and Plaintiff has never been informed by Defendant of any recalls or defects related to her Jeep Wrangler, including the Fire Defect which increases the risk of a fire and poses a serious risk of death, injury and damage to property.

35.     There is no reason for the Pump Electrical Connector, and/or any of its component parts to fail if it was installed and/or manufactured correctly.

36.     The Fire Defect was caused by the Defendant's improper installation and/or manufacturing of the Pump Electrical Connector.

37.     Federal law requires FCA to monitor defects which can cause safety issues and report them within 5 days. FCA regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law.

38.     NHTSA received at least nine complaints of engine fires from owners, including one that involved a fatality, and dating back to March 2021, well before Plaintiff purchased her vehicle.

39.     FCA should have received complaints about underhood fires in the Class Vehicles no later than March 2021.[11]

40.     FCA has knowledge of all NHTSA complaints filed concerning the vehicles it manufactures, including the Class Vehicles. *See* TREAD Act, Pub.L. No. 106-114, 114 Stat. 1800 (2000).

41.     Complaints submitted to FCA and NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal multiple instances of Class Vehicles catching on fire.

42.     In March 2021, an underhood fire in a model year 2021 Jeep Wrangler:[12]

> NHTSA ID Number: 11403621
> Incident Date: March 16, 2021
> Consumer Location: Rumson, NJ
> Vehicle Identification Number: 1C4HJXENXMW****

---

[11] *See* Ex. 8, *Complaints*, NHTSA ID: 11403621, NHTSA.GOV (Mar. 18, 2021), https://www.nhtsa.gov/?nhtsaID=11403621 (last visited January 9, 2025).
[12] *Id.*

Summary of Complaint: OUR 2021 JEEP STARTED SMOKING IN THE ENGINE AND WITHIN 10 MINUTES BURST INTO FLAMES. THE ENTIRE FRONT END WAS DAMAGED BEYOND REPAIR / BURNED AND FIRE STATIONS HAD TO PUT OUT THE FIRE. MY DAUGHTER, DOGS AND I WERE ABLE TO MAKE IT OUT OF THE CAR BUT VERY SCARY.
1 Affected Product: 2021 Jeep Wrangler

43.    In September 2021, an underhood fire in a model year 2021 Jeep Wrangler:[13]

NHTSA ID Number: 11436759
Incident Date: September 27, 2021
Consumer Location: Bellingham, WA
Vehicle Identification Number: 1C4HJXCN3MW****
Summary of Complaint: The engine caught on fire after a short drive. The fire burned the entire top of the rear of the engine and completely through the wiring harness before I could extinguish it with a fire extinguisher and water. The fire appears to have started at the top rear of the engine where the fuel line enters the intake. The manufacturer, Stellantis, hired a special investigator from EAA/Bosch to look at it, and he agrees that it is similar to fires in similar engines that were recalled in October 2020, NHTSA Campaign number 21V-665. Stellantis has not responded to repeated requests for resolution.
1 Affected Product: 2021 Jeep Wrangler

44.    In November 2021, an underhood fire in a model year 2021 Jeep Wrangler:[14]

NHTSA ID Number: 11442560
Incident Date: November 13, 2021
Consumer Location: WICKENBURG, AZ
Vehicle Identification Number: 1C4HJXEG4MW****

---

[13] Ex. 9, *Complaints, NHTSA ID: 11436759,* NHTSA.GOV (Oct. 14, 2021), https://www.nhtsa.gov/?nhtsaID=11436759 (last visited January 9, 2025).
[14] Ex. 10, *Complaints, NHTSA ID: 11442560*, NHTSA.GOV (Dec. 3, 2021), https://www.nhtsa.gov/?nhtsaId=11442560 (last visited January 9, 2025).

Summary of Complaint: My 2021 Jeep Wrangler with 1900 miles caught on fire and was a total loss, preliminary investigation believes the cause of the fire to be a gas leak. There were no indications of warning lights, saw black smoke coming from the engine compartment by the time I pulled over and got out of the vehicle it was on fire and within minutes the entire car was engulfed by flames and it was a total loss.
1 Affected Product: 2021 Jeep Wrangler

45.   In May 2023, an underhood fire in a model year 2023 Jeep Wrangler:[15]

NHTSA ID Number: 11525680
Incident Date: May 11, 2023
Consumer Location: Unknown
Vehicle Identification Number: 1C4JJXP61PW****
Summary of Complaint: I am not sure if this is something that should be reported or not. My Jeep caught on fire in a drive thru on 5/11/23. It was only 3.5 months old and had 3,465 miles on it. I saw smoke coming from under the hood, then big black billowing smoke, when some guys got the hood open there were flames coming from behind the engine. They were able to put it out with a fire extinguisher but it caused a lot of damage. It is available for inspection but I would need to know ASAP since it is at the dealer. About 3 minutes prior I was on a highway and this could have ended up so much worse as I had my two dogs with me as well. I contacted Jeep and they sent Engineering Analysis Associates/Bosch Automotive Service Solutions out to examine the car and they said "the information at hand would not permit us to associate the fire with a manufacturing or assembly error". No reason for the fire was given. Vehicle was inspected by insurance rep, investigator hired by the manufacturer. Police and fire dept were on scene at the time but did not create a report, just gave me an incident #. No warnings, messages or anything warned of the fire. I was able to drive it around to the front of the building to get it away from the building and other cars while their was smoke coming out of it. No warning lights came on at all that I could see on the dash. I want to report this incase any other Wrangler 4XE's end up having the same issue.

---

[15] Ex. 11, *Complaints, NHTSA ID: 11525680*, NHTSA.GOV (June 6, 2023), https://www.nhtsa.gov/?nhtsaId=11525680 (last visited January 9, 2025).

1 Affected Product: 2023 Jeep Wrangler

46.     In August 2023, a fire in a model year 2022 Jeep Gladiator:[16]

NHTSA ID Number: 11585273
Incident Date August 6, 2023
Consumer Location NEW FRANKEN, WI
Vehicle Identification Number 1C6HJTFG9NL****
Summary of Complaint: My 2022 Jeep Gladiator burned to the ground
with 2,500 miles. Jeep sent out their fire investigator and they said it
was not a manufacture defect on their part. Allstate sent out their fire
investigator and he said it WAS a Jeep manufacturer issue. Both Jeep
and Allstate denied to give me copies of the report findings. My Jeep
was parked and engine cold when it started smoldering and went up in
flames. My VIN is [XXXX]. I lost 12 months of payments plus $1800
in Ceramic coating along with another $2,000. in additional add ons.
INFORMATION REDACTED PURSUANT TO THE FREEDOM OF
INFORMATION ACT (FOIA), 5 U.S.C. 552 (B)(6).
1 Affected Product: 2022 Jeep Gladiator

47.     In January 2024, an underhood fire in a model year 2022 Jeep

Gladiator:[17]

NHTSA ID Number: 11567979
Incident Date: January 24, 2024
Consumer Location: AUBURN, WA
Vehicle Identification Number: 1C6JJTBG6NL****
Summary of Complaint: Our 2022 Gladiator has 1,758 miles on it and
no modifications. It was last driven about two weeks ago. It burned to
the ground [XXX] while parked next to our house. The fire started in
the engine compartment. There were no warnings of symptoms and
our jeep app showed everything was normal when last driven. It was
investigated by VRFA and I am waiting for their report. Insurance has
not yet inspected. We reported it to the dealership we bought it from.

---

[16] Ex. 12, *Complaints, NHTSA ID: 11585273*, NHTSA.GOV (Apr. 25, 2024),
https://www.nhtsa.gov/?nhtsaId=11585273 (last visited January 9, 2025).
[17] Ex. 13, *Complaints, NHTSA ID*: *11567979*, NHTSA.GOV (Jan. 26, 2024),
https://www.nhtsa.gov/?nhtsaId=11567979 (last visited January 9, 2025).

On the [XXX] website, there is another 2022 Gladiator, also low mileage, that also burned to the ground while parked. That person's insurance stated that they believe it burned due to a manufacturer defect but there are no recalls. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552 (B)(6).
1 Affected Product: 2022 Jeep Gladiator

48. In January 2024, an underhood fire in a model year 2021 Jeep Wrangler:[18]

NHTSA ID Number: 11570607
Incident Date: January 6, 2024
Consumer Location: LAYTON, UT
Vehicle Identification Number: 1C4JJXFM2MW****
Summary of Complaint: Fire started about 15 minutes after parking the Jeep. Flames and smoke first appeared in engine compartment on passenger side where an electrical panel is located. Fire spread quickly and burnt out entire front of vehicle before the fire department was able to extinguish the flames. Vehicle is a total loss.
1 Affected Product: 2021 Jeep Wrangler

49. In February 2024, an underhood fire in a model year 2022 Jeep Gladiator.[19]

NHTSA ID Number: 11573476
Incident Date: February 19, 2024
Consumer Location FORESTVILLE, CA
Vehicle Identification Number 1C6JJTBM7NL****
Summary of Complaint: I was driving my Jeep Gladiator on [XXX] Shasta Co, CA, on a snowy mountain highway. I had my husband, two children and two dogs in the vehicle. Without warning the power steering went out. Within 20 seconds a steering wheel light appeared

---

[18] Ex. 14, *Complaints, NHTSA ID: 11570607*, NHTSA.GOV (Feb. 7, 2024), https://www.nhtsa.gov/?nhtsaId=11570607 (last visited January 9, 2025).
[19] Ex. 15, *Complaints, NHTSA ID: 11573476*, NHTSA.GOV (Feb. 22, 2024), https://www.nhtsa.gov/?nhtsaId=11573476 (last visited January 9, 2025).

on the dash. Within approximately 20 more seconds, I was able to pull over into a plowed turnout. As soon as we stopped the vehicle we noticed a fire in the engine compartment. We were able to extinguish it within a few minutes with our fire extinguisher. The vehicle has approximately 15000 miles on it and is under warranty. It is currently under inspection to determine if it falls under warranty.
INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
1 Affected Product: 2022 Jeep Gladiator

50.    In   March   2024,   an   underhood   fire   in   a   model   year   2022   Jeep

Wrangler:[20]

NHTSA ID Number: 11576144
Incident Date: March 6, 2024
Consumer Location: TITUSVILLE, NJ
Vehicle Identification Number: 1C4HJXEM2NW****
Summary of Complaint: The detective reported that the 2022 Jeep Wrangler spontaneously caught on fire. The contact stated that after the owner parked the vehicle, approximately six hours later a fire occurred which started in the engine compartment of the vehicle. The fire department was called to the scene and extinguished the flames. During the incident the vehicle was destroyed. No injuries were reported. A police and fire report was taken at the scene and the vehicle was later tow away. The cause of the failure was not yet determined. The manufacturer and local dealer were not notified by the contact. The contact was concern that the vehicle had experienced the same failure listed in the NHTSA Campaign Number: 23V787000 (Electrical System) which did not include the diesel models. The contact indicated that the vehicle had experienced that same failure listed in the recall. The failure mileage was unknown.
1 Affected Product: 2022 Jeep Wrangler

51.    In July 2024, an underhood fire in a model year 2022 Jeep Gladiator:[21]

---

[20] Ex. 16, *Complaints, NHTSA ID: 11576144*, NHTSA.GOV (Mar. 8, 2024), https://www.nhtsa.gov/?nhtsaId=11576144 (last visited January 9, 2025).
[21] Ex. 17, *Complaints, NHTSA ID:* 11617119, NHTSA.GOV (Mar. 8, 2024), https://www.nhtsa.gov/?nhtsaId=11617119 (last visited January 9, 2025).

NHTSA ID Number: 11617119
Incident Date: July 5, 2024
Consumer Location: Unknow
Vehicle Identification Number: 1C6JJTBG4NL****
Summary of Complaint: In the early afternoon hours of July 5, 2024, our 2022 jeep gladiator rubicon with only 18,000 miles spontaneously combusted in our driveway after being parked there for just under 24 hours. While working in the yard, my husband noticed thick black smoke coming from the engine. The smoke quickly turned into flames then rapidly intensified as it spread throughout the engine, cabin and then ultimately the entire jeep. The jeep was a total and complete loss with Jeep claiming no responsibility whatsoever. We have over $60,000 in damages to our home, driveway, landscaping and soil (PFAS) from the fire, NOT including the jeep itself. Note *The engine light did go on about a month prior to the fire, which from what we were told by Jeep service dept, was due to multiple misfires. This issue was resolved immediately. After the fire, the jeep was inspected by our insurance company and also by Jeep. Because the fire was so intense and quickly spread, there wasn't anything left. Jeep never returned our calls and never once tried to make things right! Our safety was at risk for obvious reasons. The Jeep spontaneously started on fire due to no fault of our own. Had we not been home, or had the Jeep been parked in our garage, facing the garage or the fire started at night while we were sleeping, the outcome would have been quite different. The damage it DID do to our property along with the mental anxiety and stress of trying to pay for repairs is significant enough without actually having our house burn down to the ground. This is unacceptable! Jeep needs to take responsibility!
1 Affected Product: 2022 Jeep Gladiator

52.     Upon information and belief, there have been more underhood fires in the Class Vehicles than the 9 that have been reported to the NHTSA.

53.     NHTSA opened an investigation to determine the cause and scope of the Fire Defect.

54.     While Defendant is said to be cooperating with the NHTSA's investigation, Defendant has not issued a recall based on the Fire Defect.

55.     As such, Plaintiff and the other class members are left with a vehicle that has an extremely dangerous latent defect that they were/are unaware of and which may manifest itself in a sudden, unexpected fire.

56.     The fires referenced herein and the NHTSA's investigation have received media attention and the community, particularly those who would purchase the Class Vehicles, now used, are aware of the fires that the Class Vehicles have suffered.

57.     Due to the Fire Defect, Plaintiff's and the other Class Members' vehicles have a lower fair market value because of the stigma of the Fire Defect, and Plaintiff and Class Members have suffered quantifiable economic losses, including diminished resale or trade-in value, and will have to expend time and money to monitor the Class Vehicles for any signs of the Fire Defect having manifested and to have mechanics inspect the Class Vehicles.

58.     In all, Plaintiff and the other Class Members have suffered concrete monetary damages as a result of the Fire Defect, up to and including the full purchase price of the vehicle.

59.     Because FCA concealed the existence of the Fire Defect, Plaintiff and the other Class members had no way of knowing about the unreasonable fire risk of the Class Vehicles.

60.     Within the period of any applicable statutes of limitation, Plaintiff and the other Class members could not have discovered through the exercise of reasonable diligence that FCA was concealing the Fire Defect complained of herein.

61.     Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that FCA did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that FCA had concealed information about the unreasonable risk that the Class Vehicles would catch fire, which was discovered by Plaintiff shortly before she filed this action.

62.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

63.     FCA was under a continuous duty to disclose to Plaintiff and Class members the true character, quality, and nature of the risk that the Class Vehicles would catch fire.

64.    FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the risk that the Class Vehicles would catch fire.

65.    Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

## V.    CLASS ALLEGATIONS

66.    Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class:** All persons in the United States who purchased or leased a 2021 through 2023 model year Jeep Wrangler JL and/or Jeep Gladiator vehicle.

> **Illinois Subclass:** All persons who purchased or leased a 2021 through 2023 model year Jeep Wrangler JL and/or Jeep Gladiator vehicle in the state of Illinois.

67.    Excluded from the Class are any persons who fall within the definitions if the person is: (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; and (iii) an employee of the Court where this action is pending.

68.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

69.     The particular members of the Class and Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative Class and Subclass are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents or from public records.

70.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

71.     Upon information and belief, the Class and Subclass are so numerous that the joinder of all Class and Subclass Members is impracticable. While the exact number and identities of individual members of the Class and Subclass are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class and Subclass may be notified of the pendency of this action by recognized, Court approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

72.     Plaintiff is an adequate class representative because her interests do not conflict with the interests of the Class and Subclass she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action

litigation, and she intends to prosecute this action vigorously. The interests of the Class and Subclass will be fairly and adequately protected by Plaintiff and her counsel.

73.     A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class and Subclass Members and questions of law and fact common to all Class and Subclass Members predominate over questions affecting only individual class members. The Class and Subclass Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources including those from the state of Illinois.

74.     Common questions of law and fact exist as to all members of the Class and Subclass. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

   a.  Whether the Class Vehicles have the Fire Defect;

   b.  Whether the Fire Defect would be considered material by a reasonable consumer;

   c.  Whether the Fire Defect would constitute an unreasonable safety risk;

   d.  Whether Defendant had a duty to disclose the Fire Defect to Plaintiff and other Class Members;

e.  Whether Defendant knew or reasonably should have known of the Fire Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

f.  Whether the Fire Defect has diminished the value of the Class Vehicles;

g.  Whether the Fire Defect is capable of being repaired;

h.  Whether Defendant has to institute a recall campaign to inform the Class and Subclass members of the Fire Defect and to repair the Fire Defect;

i.  Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose or repair the Fire Defect in their Class Vehicles;

j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the Uniform Commercial Code;

k.  Whether Defendant was unjustly enriched;

l.  Whether Plaintiff and other Class members are entitled to damages and other monetary relief and, of so, in what amount;

m. Whether FCA designed, manufactured, marketed, and distributed the Class Vehicles with the Fire Defect;

Whether the Plaintiff and Class members overpaid for their vehicles at the point of sale;

n.  Whether Defendant had knowledge of the heightened fire risks in the Class Vehicles when it placed them into the stream of commerce; and

o.  Whether Defendant should have had knowledge of the heightened fire risks in the Class Vehicles when it placed them into the stream of commerce.

**COUNT I**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(ON BEHALF OF PLAINTIFF AND THE CLASS AND SUBCLASS)**

75.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.    Plaintiff brings this count on behalf of herself and the Class.

77.    Defendant is a merchant and was at all relevant times involved in distributing, warranting, and/or selling the Class Vehicles.

78.    The Class Vehicles are "goods" under the relevant laws and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

79.    Defendant, through its authorized dealerships, entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and the other Class Members for personal use.

80.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff and the Class members.

81.     Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation as they have a latent defect that can cause the vehicles to spontaneously catch on fire.

82.     Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the Class Vehicles spontaneously catching on fire, the Class Vehicles are not fit for their particular purpose of transportation and usage.

83.     The written warranties provided by Defendant expressly applies to the purchasers of the Class Vehicles creating privity between Defendant and Plaintiff and Class Members.

84.     Notwithstanding this, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer, including Plaintiff and Class Members.

85.     Defendant was put on actual notice of its breach of warranty through, in part, consumer complaints and communications with the NHTSA, including Plaintiff's own communications with Defendant through its authorized dealership about the Fire Defect.

86.     Had Plaintiff, Class Members and the public known that the Class Vehicles would suffer from the Fire Defect, they would not have purchased the Class Vehicles or would have paid less for them.

87.     As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and will continue to suffer financial damages, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law, as Plaintiff and the other members of the Class purchased a vehicle that imposes an increased risk of death, personal injury and catastrophic property damage.

88.     Plaintiff's and the Class' Class Vehicles have a diminished value because of the Fire Defect and when Plaintiff and the other Class Members sell their Class Vehicles, they will be sold at a diminished value.

89.     Plaintiff and the other Class Members will also be forced to pay for an inspection and potential repairs necessitated by the Fire Defect and risks posed thereby.

**COUNT II**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT, 815 ILCS 505,**
***ET SEQ.* (ON BEHALF OF PLAINTIFF AND THE SUBCLASS)**

90.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff brings this count on behalf of herself and the Subclass.

92.    Defendant had knowledge that the Class Vehicles suffered from the Fire Defect, was defectively designed and/or manufactured and were not suitable for their intended purpose prior to their sale to Plaintiff and the other members of the Subclass.

93.    Having been aware of the Fire Defect and knowing that the Plaintiff and the other Subclass members could not have reasonably been expected to know or discover the Fire Defect, Defendant had a duty to disclose the Fire Defect to Plaintiff and the other Subclass members in connection with the sale of the Class Vehicles. Defendant had a further duty to disclose the Fire Defect because:

    a.  Defendant was in a superior position to know the true state of facts about the Fire Defect in the Class Vehicles and Defendant knew these facts were not known or reasonably discoverable by Plaintiff or Subclass Members;

    b.  Given the Fire Defect's technical and hidden nature, Plaintiff and the Subclass Members lack the sophistication and expertise in vehicle components that would be necessary to discover the Fire Defect on their own;

    c.  Defendant knew that the Fire Defect gave rise to safety concerns for Plaintiff and the Subclass Members who use the Class Vehicles and the omitted and/or concealed facts relating to the Fire Defect were material because they directly impact the safety of the Class Vehicles;

    d.  Defendant made incomplete representations about the safety and reliability of the Class Vehicles while actively withholding and concealing from the Plaintiff and the Subclass Members the material facts about the known Fire Defect. In uniform advertising and materials provided with each Class Vehicle, Defendant intentionally concealed, suppressed, and failed to disclose to the

Plaintiff and the Subclass Members that the Class Vehicles suffered from the Fire Defect.

94.    Defendant concealed from and failed to disclose to Plaintiff and the Subclass members the defective nature of the Class Vehicles, in direct breach of its duties.

95.    The fact that the Class Vehicles contained the Fire Defect is a material fact as any defect that could potentially cause the vehicle to catch fire is a critical defect, likely to cause great harm, and a reasonable person would find it important when deciding whether to purchase and/or lease a new or used motor vehicle and because it directly impacts both the safety and value of the Class Vehicles purchased or leased by the Plaintiff and the Subclass Members.

96.    Defendant intended for Plaintiff and the other Subclass Members to rely on its omissions regarding the Class Vehicles having the Fire Defect and to act upon such omissions in choosing to purchase the Class Vehicles.

97.    Plaintiff and the Subclass Members did rely on Defendant's omissions, and they would not have purchased or leased the Class Vehicles had they known of the Fire Defect and the risk it posed. Plaintiff and the Subclass Members did not know of the Fire Defect or the risk that it posed and relied upon the Defendant's omissions as to the safety of the Class Vehicles when they purchased or leased them.

98.     Plaintiff's and the Subclass Members' reliance on Defendant's omissions was reasonable as they had no way of discerning the facts that Defendant concealed or failed to disclose a critical latent defect in the Class Vehicles.

99.     Furthermore, Defendant's actions in manufacturing and/or installing the Pump Electrical Connectors in the Class Vehicles in such a manner that causes a risk of fire but failing to implement any recall or to notify Plaintiff and the Subclass members of the Fire Defect, offends public policy, is immoral, unethical, and oppressive, and has caused substantial injury to consumers, including Plaintiff and the other members of the Subclass.

100.    As a direct and proximate result of Defendant's misconduct and omissions, Plaintiff and the Subclass Members have suffered and will continue to suffer damages as they purchased or leased a vehicle that is worthless or of greatly diminished value and unsafe and will have to spend time and resources investigating and fixing the Fire Defect.

### COUNT III
### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFF AND THE CLASS AND SUBCLASS)

101.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.    Plaintiff and the other Class Members conferred benefits on Defendant in the form of money paid to purchase the Class Vehicles.

103.   Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and Class Members.

104.   At the time Defendant marketed and sold the Class Vehicles to Plaintiff and the other Class Members, Defendant omitted material information that the Class Vehicles had the latent Fire Defect that created an increased risk of fire.

105.   If Plaintiff and the other Class Members had known of the Fire Defect in the Class Vehicles that they purchased, they would not have purchased them or would have paid less for them than they did.

106.   It would be unjust and inequitable for Defendant to retain the benefit it obtained from selling the Class Vehicles based on the material omissions that it made, and Defendant should be compelled to pay restitution to Plaintiff and Class Members for its unjust enrichment.

**COUNT IV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF, THE CLASS AND SUBCLASS)**

107.   Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

108.   Plaintiff brings this Count on behalf of herself and the Class and Subclass.

109.   Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA").

110.   Defendant is a "supplier" and "warrantor" within the meaning of the MMWA.

111.   The Class Vehicles are "consumer products" within the meaning of the MMWA.

112.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

113.   FCA provided Plaintiff and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, FCA warranted that the Class Vehicles were fit for their ordinary purpose as safe vehicles and would pass without objection in the trade as designed, manufactured, and marketed.

114.   Defendant breached the implied warranty of merchantability by selling to Plaintiff and the other Class Members the Class Vehicles that suffered from the common Fire Defect in that they are all equipped with a power steering pump electrical connector that makes the Class Vehicles susceptible to a risk of

spontaneously catching on fire, causing an unreasonable risk of death, serious bodily harm and/or property damage to Plaintiff and Class members and to passengers, property owners, bystanders and others using the roadways.

115.   The Class Vehicles could not be used for their ordinary purpose because of the increased risk of a fire caused by the Fire Defect.

116.   The Fire Defect rendered the Class Vehicles unmerchantable and unfit for their ordinary use at the point of sale or time of lease.

117.   Any effort by FCA to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

118.   Any limitations FCA might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between FCA and Plaintiff and Class members because, at the time of purchase or lease, Plaintiff and Class members had no other options for purchasing warranty coverage other than directly from FCA.

119.   Any limitations FCA might seek to impose on its warranties are substantively unconscionable. FCA knew or should have known that the Class Vehicles were defective and that the Class Vehicles could spontaneously catch fire when used as intended.

120.   Plaintiff and Class members have had sufficient direct dealings with FCA to establish privity of contract between FCA and the Plaintiff and Class members. Nonetheless, privity is not required here because Plaintiff and Class members are intended third party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not meant to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit consumers like the Plaintiff and Class members. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Fire Defect, as spontaneous fires present an unreasonable risk of death, serious injury and property damage to Plaintiff, Class members and the public generally.

121.   Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give FCA notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Procedure.

122.   Plaintiff and Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because FCA will not acknowledge any revocation of acceptance and

immediately return any payments made, Plaintiffs have not re-accepted their Class Vehicles by retaining them.

123.   Plaintiff and the other Class Members suffered monetary damages as a result of Defendant's breach of its implied warranty of merchantability because they would not have bought the Class Vehicles that they purchased had they known that they had a latent defect that could cause them to catch fire.

124.   Plaintiff and the other Class Members also suffered monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the Fire Defect.

125.   Plaintiff and the other Class Members seek full compensatory, punitive and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled for Defendant's breach of its implied warranties.

126.   Plaintiff also seeks the establishment of an FCA funded program for Plaintiff and Class members to recover out-of-pocket costs incurred in attempting to rectify and/or mitigate the effects of the Fire Defect in the Class Vehicles and the risks caused thereby.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class and Subclass Members, requests that the Court enter and order judgment as follows:

A.   Certifying the Class and Subclass as proposed herein, designating Plaintiff as Class representative and appointing the undersigned as Class Counsel;

B.   Declaring that Defendant is financially responsible for notifying the Proposed Class Members of the pendency of this action;

C.   Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and the Class and Subclass Members are entitled;

D.   Conducting a trial by jury in this action;

E.   Awarding pre-judgment and post-judgment interest on any amounts awarded, as permitted by law;

F.   Awarding attorney's fees and costs;

G.   Awarding any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims and issues so triable.

Dated: March 3, 2025                    Respectfully submitted,

By:  */s/ Dennis A. Lienhardt*
E. Powell Miller (P39487)
Dennis A. Lienhardt, Jr. (P81118)
THE MILLER LAW FIRM PC
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@millerlawpc.com
dal@millerlawpc.com

- 35 -

Steve W. Berman
Rachel Fitzpatrick
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
rachelf@hbsslaw.com

Myles McGuire
Eugene Y. Turin
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
eturin@mcgpc.com
jdunklin@mcgpc.com

John Sawin
SAWIN LAW LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 853-2490
jsawin@sawinlawyers.com

Scott A. Morgan
MORGAN LAW FIRM, LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 327-3386
smorgan@smorgan-law.com

*Attorneys for Plaintiff and the Putative Class*